# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

————————————

Nº 04-CV-1568 (JFB) (MLO)

————————————

## WILLIAM DUFF,

Plaintiff,

VERSUS

## COMMISSIONER OF THE SUFFOLK COUNTY POLICE DEPARTMENT, ET AL.,
Defendants.

————————————

MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATION
December 10, 2007

————————————

JOSEPH F. BIANCO, District Judge:

On April 12, 2004, *pro se* plaintiff William Duff ("Mr. Duff") filed a complaint alleging violations of 42 U.S.C. § 1983, including conspiracy, unreasonable and excessive force, false written statement, false arrest, false imprisonment, malicious prosecution, violations of the Sixth and Fourteenth amendments, failure to protect while in custody, supervisory liability, failure to intercede based on racially-motivated animus, and perjured testimony. Plaintiff further alleged that a conspiracy existed to interfere with and deprive him of his civil rights in violation of 42 U.S.C. § 1985(3) and 42 U.S.C. § 241.

Mr. Duff also brought two other cases against Suffolk County and its employees which were resolved in defendants' favor after a jury trial. Specifically, in *Duff v. John Doe,*

*et al.*, 03-CV-1912(JFB)(MLO), the jury returned a verdict on October 31, 2006 in defendants' favor. Similarly, in *Duff v. Soto, et al.*, 03-CV-2749(JFB)(MLO), the jury returned a verdict on March 27, 2007 in defendants' favor. Mr. Duff is currently appealing the judgment in the *Soto* case to the Second Circuit.

With respect to the instant lawsuit, on May 11, 2007, the Court referred the parties to United States Magistrate Court for a settlement conference. On June 6, 2007, a settlement conference was held before Magistrate Judge Michael L. Orenstein. During this conference, both parties agreed on the record to a final settlement of all plaintiff's pending cases against the County, including the above-referenced case on appeal. After Mr. Duff refused to execute the settlement documents in the weeks following the June 6th conference and claimed that such documents

were inconsistent with the terms agreed upon on the record on June 6, this Court again referred the matter to Magistrate Judge Orenstein to address these issues. On October 24, 2007, Magistrate Judge Orenstein issued a Report and Recommendation, holding that based upon the June 6, 2007 transcript, plaintiff and defendants had settled all of Mr. Duff's pending cases, including the instant case and the separate case (*Duff v. Soto, et al.*) currently on appeal. Magistrate Judge Orenstein further noted that plaintiff agreed to the settlement of the case under oath. Thus, Magistrate Judge Orenstein recommended that his action be dismissed with prejudice. Mr. Duff filed his objections to Magistrate Judge Orenstein's Report and Recommendation on November 7, 2007. As set forth below, under a *de novo* standard of review, the Court agrees with Magistrate Judge Orenstein that the plaintiff knowingly and voluntarily entered into an in-court settlement agreement. Accordingly, the terms of the settlement agreement on the record are fully enforceable and, pursuant to those terms, the instant lawsuit is dismissed with prejudice.

## A. Standard of Review

A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); *Walker v. Hood*, 679 F. Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific, written objection" is made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997). As to

those portions of a report to which specific written objections are made, the Court reviews such findings *de novo*. *See* Fed. R. Civ. P. 72(b); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

## B. Enforceability of Settlement Agreements

The Second Circuit has held that settlement agreements negotiated between litigants are considered no different than other contracts and, therefore, are subject to general principles of contract law. *See, e.g., Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("A settlement agreement is a contract that is interpreted according to general principles of contract law. . . .Once entered into, the contract is binding and conclusive.") (citation omitted); *accord Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005); *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). Moreover, there is no requirement that the settlement agreement be in writing in order for it to be enforceable. Thus, in *Powell v. Omnicom*, the Second Circuit reiterated that where a "'voluntary, clear, explicit, and unqualified' settlement [was made] on the record in open court. . . . the fact that the settlement was never reduced to writing is insufficient to render the settlement nonbinding."[1] 497 F.3d at 129.

---

[1] In *Powell*, the Second Circuit noted that "[i]t is unclear whether the settlement of federal claims is governed by New York law or federal common law." *Powell*, 497 F.3d at 129 n.1. However, the Second Circuit concluded that it need not resolve that issue because New York law and federal common law were not materially different and, thus, New York law and federal common law could be applied "interchangeably" in this context. *Id.*

Once such a binding settlement exists, a claim by a litigant that he or she misunderstood the consequences of such a settlement is insufficient to relieve that party of the terms of such settlement. *See, e.g., Powell*, 497 F.3d at 128 ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a [sic] choice simply because his assessment of the consequences was incorrect.") (citing *United States Bank of N.Y.*, 14 F.3d 756, 769 (2d Cir. 1994)). Similarly, "[t]he settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." *Id.* at 129. For example, in *Doi v. Halekulani*, 276 F.3d 1131 (9th Cir. 2002), the Ninth Circuit found that the District Court did not abuse its discretion by (1) enforcing a settlement agreement entered into in open court, and (2) sanctioning plaintiff for her unreasonable failure to sign the written agreement. Specifically, the court explained:

[H]ere, the plaintiff made a binding settlement agreement *in open court*; when read the terms of the agreement, and asked if she agreed with them, [plaintiff] simply responded, "yeah." At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation.

*Id.* at 1141 (emphasis in original); *see also Manning v. New York Univ.*, 299 F.3d 156, 164 (2d Cir. 2002) ("[P]laintiff's change of mind does not excuse her [or him] from performance of her [or his] obligations under the settlement agreement") (quotations and citation omitted); *Wynn v. Wegmans Food Markets,* No. 96-CV-6307L, 2007 WL 2994227, at *4 (W.D.N.Y. Oct. 11, 2007) ("When both parties have mutually assented to a contract and there is an intention to be bound, the settlement is binding notwithstanding a litigant's 'change of heart' or the acquisition of 'cold feet.'"(citing *Powell*, 497 F.3d 124)); *see also MacDonald v. Dragone Classic Motor Cars*, No. 395-CV-499, 2003 WL 22056626, at *6 (D. Conn. Apr. 29, 2003) ("[O]nce reached, a settlement agreement constitutes a contract that is binding and conclusive. . . . even if a party has a change of heart."); *Conway v. Brooklyn Gas Co.*, 236 F. Supp. 2d 241, 251 (E.D.N.Y. 2002) ("Once a party agrees to the settlement terms, either orally or in writing, that party's later change of heart will not frustrate the agreement's enforceability.").

Finally, if the agreement is knowing and voluntary, the *pro se* status of the litigant does not allow the litigant to escape from the terms of the valid agreement. *See, e.g., Willgerodt v. Hohri,* 953 F. Supp. 557 (S.D.N.Y. 1997) ("An agreement entered into by a *pro se* plaintiff in open court is likewise binding.") (citations omitted) .

### C. Analysis of Instant Settlement

In the instant case, after a detailed dialogue between Mr. Duff and counsel for defendants (Suffolk County Attorney Brian Mitchell, Esq.) regarding the terms of the settlement, Magistrate Judge Orenstein stated the clear terms of the agreement on the record and ensured that Mr. Duff's agreement to the terms was knowing and voluntary:

> **THE COURT:** All right, the offer is $1,200 to you and all cases and any and all claims arising out of any of these three cases, including the civil case, which is -- I believe you filed an appeal on?
>
> **MR. DUFF:** Yes.
>
> **THE COURT***:* All right, all those cases will therefore be discontinued with prejudice, and there will not be any claims arising out of any of the events that those cases encompass, do you understand that?
>
> **MR. DUFF:** Yes, I do.
>
> **THE COURT:** Okay. Did anyone force you or threaten you to agree to the settlement?
>
> **MR. DUFF:** No one forced me. I agreed upon the settlement on my own conduct.
>
> **THE COURT:** Okay, now, while I'm on the phone with you, Mr. Duff, I can't see whether or not you raise your right hand or not. I would like to attempt to have you understand that your answers to me are being given as if you were placed under oath or affirmation, do you understand that?
>
> **MR. DUFF**: Yes, I do.
>
> **THE COURT:** So therefor[e] you are either affirming or swearing to God that you are telling the truth in telling me that you want to settle these cases for the sum of $1,200 and that you will sign whatever paperwork is required for the discontinuance of these cases with prejudice and the releases?
>
> **MR. DUFF**: I swear under oath that the answer that I'm giving is freely and there will not be any future proceedings regarding any of the lawsuits that has been tried or about to be tried that has been found against the police department.
>
> **THE COURT:** Okay, is that also -- were there any corrections officers involved in any of those lawsuits?
>
> **MR. MITCHELL:** In the first one, Judge, yes. I was the corrections department and the sheriffs --
>
> **THE COURT**: All right, and you understand that Mr. Duff, right?
>
> **MR. DUFF**: Yes.

(Transcript of June 6, 2007 Settlement Conference ("Tr."), at 9-10.) Based upon Magistrate Judge Orenstein's thorough questioning of Mr. Duff regarding the terms of the settlement, it is clear that Duff agreed

to a "voluntary, clear, explicit, and unqualified" settlement of all pending cases through his assent under oath in open court. Duff further agreed to sign all paperwork that is required including releases. In sum, the Court finds that this settlement on the record is binding on the parties.

The Court has carefully reviewed Mr. Duff's objections to the Report and Recommendation *de novo* and finds them to be without merit. First, in his objections, Mr. Duff argues that the defendants are attempting to "manipulate the language of the General Release Form" and makes a number of objections to the specific language in the General Release. Although the Court concludes that the General Release Form is consistent with the terms of the settlement agreed upon in court, there is no need to have Mr. Duff execute the General Release. Instead, the Court will simply bind Mr. Duff to the clear and explicit terms he agreed to on the record under oath – namely, (1) the payment of $1,200 to Mr. Duff by the defendants; (2) the discontinuance of all cases with prejudice, including the pending civil appeal from *Duff v. Soto, et al.*, 03-CV-2749 (JFB)(MLO);[2] and (3) the release of all future claims against Suffolk County and its employees (including the Suffolk County

Police Department) arising out of any of the events that the previous cases encompass. Therefore, to the extent that Mr. Duff believes that the particular language of the General Release is somehow inconsistent with the terms agreed to on the record, those objections are moot because the Court is not requiring Mr. Duff to sign the General Release, but rather is only enforcing the settlement utilizing the language agreed upon in court.

To the extent that Mr. Duff also now claims that the settlement did not include a release of all future claims including malicious prosecution and the withdrawal of his appeal, or now contends that he misunderstood these terms of the settlement, the record completely contradicts any such contention.[3] Specifically, as the terms of the settlement were being placed on the record, Mr. Duff was explicitly told, and stated that he understood, that the settlement released any future claims arising from the facts of these cases against Suffolk County, including the Suffolk County Police Department. As discussed on the record, the only potential claims that Mr. Duff retained were claims against the alleged victim of the crime that was the subject of the underlying conviction.

---

[2] The withdrawal of the pending civil appeal before the Second Circuit was not only covered by Magistrate Judge Orenstein, but was also specifically discussed in the dialogue between Mr. Duff and counsel for defendants regarding the terms of the agreement. (Tr. 4.) (MR. MITCHELL: Okay. And Mr. Duff, just so it's clear, I know that you have an appeal on the one that we just tried, okay. You would – the offer would involve you withdrawing the appeal. This to wrap everything up. Are you aware of that? MR. DUFF: Yes.)

---

[3] As noted *supra*, although Mr. Duff is *pro se*, he is no stranger to civil litigation. At the time of this settlement conference with Magistrate Judge Orenstein, Mr. Duff had represented himself as a plaintiff in trials before a jury in two of his civil rights lawsuits that the undersigned presided over. In addition, Mr. Duff entered into another settlement in 2005 with the County (represented by Mr. Mitchell) in connection with a different lawsuit that Mr. Duff had filed in 2000. *See Duff v. O'Neil, et al.*, 00-CV-4710 (JS) (MLO). Thus, Duff is certainly familiar with court procedure and the binding effect of a settlement agreement.

Although Mr. Duff now claims in his objections that he would have never given up his ability to bring a new lawsuit for malicious prosecution against the County if his 2003 conviction was overturned, that issue was specifically discussed on the record and Mr. Duff explained that he understood that he could not sue the County (including the County Police Department) again even if he were ultimately exonerated on that criminal conviction through an appeal:

**MR. DUFF:** That's for -- that understanding -- let's say, for instance, that -- because you read my amended suit referring to 27-49, right, so let's say, for instance, that later on I'm exonerated of this particular crime that I'm incarcerated for. Does that include not suing them for that?

**MR. MITCHELL:** Yeah, Mr. Duff, it's all done is what it comes down to. The non-legal phrase is we're willing to settle the case, but it's done, you're not -- of the three cases you have, okay, the one where you -- we have two that we tried and then the third one, you would be releasing everybody, even on the ones that you lost, for that very reason; so that we don't come back and do it again.

\*     \*     \*

**MR. MITCHELL:** . . . And if for some reason -- I don't know what the status is of your appeal on that case on the criminal end, but if for some reason that didn't work out for you --or rather, did work out for you, what we're saying is we're not -- what we're doing today, this deal means that I'm not going to see another lawsuit from you relating to those events. Now,

what I'm talking about is the police department. I cannot speak for and I cannot prevent you from brining a lawsuit against that young lady; I don't represent her. But as far as the police department's concerned and the County, that's what we're doing today is -- the simple phrase is if we resolve this through a settlement, it's all gone, meaning I'm not going to see any more lawsuits from you in relation to any of these three different cases.

**MR. DUFF:** Oh, Okay.

**MR. MITCHELL:** I just want to make sure that you understand that.

**MR. DUFF:** Okay. I believe I got an understanding and you're referring -- you're also referring that even if I'm exonerated of it and decide that I want to sue the person -- the alleged victim, I can,. But however, on the other hand, I won't be able to sue the police department. That's my understanding, correct?

**MR. MITCHELL:** Right, and Mr. Duff, I don't mean to split hairs here, I'm not giving you advice as to what you can do with the young lady who is the victim of the crime.

**MR. DUFF:** I understand.

**MR. MITCHELL:** I'm telling you that you won't be able to sue the County or anybody related to the County or the police officers, okay?

**MR. DUFF:** Okay.

(*Id.* at 5-8.) Magistrate Judge Orenstein reiterated this point in stating, "All right, the

6

offer is $1,200 to you and all cases and any and all claims arising out of any of these three cases." (*Id.* at 8.) Therefore, it is clear from Mr. Duff's own words on the record that he understood that, even if his 2003 conviction were overturned in some subsequent judicial proceeding, he would not be permitted to bring a new lawsuit against the County or any of its employees, including police officers.

Finally, Mr. Duff's objection to the settlement on the grounds that he may not be able to recoup the cost of his civil appeal ($455 filing fee and $105 for copying) is also without merit. Reimbursement of the cost of his appeal was never discussed at the Settlement Conference and there is absolutely no basis for Mr. Duff to believe that the County would reimburse him for the cost of his appeal. Any misunderstanding he had regarding that issue does not provide a basis for precluding the enforcement of the terms of the settlement agreement reached on the record. *See Powell*, 497 F.3d at 128 ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a [sic] choice simply because his assessment of the consequences was incorrect.") (citing *United States Bank of N.Y.*, 14 F.3d at 769).

In sum, the Court has conducted a review of the full record, including, among other things, the complaint, the parties' respective submissions in connection with defendant's motion, as well as the Report and Recommendation, applicable law, and plaintiff's objections. Having reviewed the Report and Recommendation *de novo*, the Court adopts the Report and Recommendation in its entirety.

**CONCLUSION**

For the reasons set forth therein, the Court adopts the Report and Recommendation dismissing the case with prejudice pursuant to the settlement terms agreed upon on the record. Specifically, the terms of the settlement as stated on the record are as follows: (1) the payment of $1,200 to Mr. Duff by the defendants; (2) the discontinuance of all pending cases by Mr. Duff against the County with prejudice, including the pending civil appeal from *Duff v. Soto, et al.*, 03-CV-2749 (JFB) (MLO); and (3) the release of all future claims against Suffolk County and its employees (including the Suffolk County Police Department) by Mr. Duff, arising out of any of the events that the three cases (03-CV-1912, 03-CV-2749, and 04-CV-1568) encompass.

Based upon these settlement terms, the County shall pay Mr. Duff $1,200 by February 29, 2008. Moreover, the case of *Duff v. Commissioner of Suffolk County Police Department,* 04-CV-1568 (JFB) (MLO) is dismissed with prejudice. The Court shall maintain jurisdiction over this lawsuit to enforce the terms of the settlement agreement contained and incorporated in this Memorandum and Order. *See Scelsa v. City University of N.Y.,* 76 F.3d 37, 41 (2d Cir. 1996) (holding that the district court retains jurisdiction to enforcement settlement "if the Dismissal Order expressly reserved authority to enforce the Agreement, or incorporated the Agreement into the order") (citing *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994)).[4] The Clerk of the Court

---

[4] To the extent that defendants seek to have this Court order that plaintiff withdraw his appeal in the *Soto* case, the Court declines to issue such an

shall close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 10, 2007
Central Islip, New York

* * *

Plaintiff *pro-se* is William Duff, 04-A-0126, Coxsackie Correctional Facility, P.O. Box 999, Coxsackie, NY 12051-0999. The attorneys for defendants are Patricia A. Rouse, Suffolk County Attorney's Office, P.O. Box 6100, 100 Veterans Memorial Highway, Hauppauge, NY 11788-0099, & Brian C. Mitchell, Suffolk County Dept. Of Law - County Attorney, 100 Veterans Memorial Highway, P.O. Box. 6100, Hauppauge, NY 11788.

---

order. Although this Court concludes that this settlement agreement requires plaintiff to withdraw such appeal, the Court believes that it is prudent to leave dismissal of that pending appeal to the Second Circuit after review of this Memorandum and Order, rather than this Court seeking to eliminate that appeal entirely through its own Order. *See, e.g., Cinema '84 v. Comm'r of Social Sec.,* 294 F.3d 432, 446 (2d Cir. 2002) (dismissing plaintiff's appeal on one issue "because, prior to this appeal, she settled her claims concerning this issue by concluding a settlement agreement with the Commissioner"). In other words, defendants may seek to have the Second Circuit dismiss the appeal in the *Soto* case pursuant to the settlement terms set forth in this Memorandum and Order.